J-S65019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO M.G.F. and K.F., MINORS | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.F.-T., FATHER | : | No. 1145 MDA 2018 |

Appeal from the Decree Entered May 29, 2018
In the Court of Common Pleas of Lebanon County
Orphans' Court at No: 2018-364

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 11, 2019**

K.F.-T. ("Father") appeals from the decrees entered May 29, 2018, in the Court of Common Pleas of Lebanon County, which terminated involuntarily his parental rights to his minor daughters, M.G.F., born in June 2011, and K.F., born in September 2012 (collectively, "the Children").[1]  Additionally, Father's counsel has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  Upon review, we grant counsel's petition to withdraw and affirm the decrees.

---

[1] The decrees also terminated the parental rights of I.B. ("Mother").  Mother did not appeal the termination of her parental rights, nor did she participate in this appeal.

The Children entered foster care on January 17, 2017, after Mother was evicted from her apartment. N.T., 5/21/18, at 4. Mother had "no place to go," so she signed a voluntary placement agreement with Lebanon County Children and Youth Services ("CYS"). *Id.* The juvenile court adjudicated the Children dependent on February 6, 2017. CYS did not initially know Father's whereabouts, but soon discovered that he was incarcerated at SCI Frackville. *Id.* at 5, 13. The record is not entirely clear as to the reasons for Father's incarceration. According to Father, he was attending an inpatient program and "they tried to put a case on me. I won the case, but parole violated me for a telephone[,]" resulting in his incarceration in February 2017. *Id.* at 31-32.

As the Children's dependency progressed, Father was transferred from SCI Frackville to Berks County Prison before moving to a halfway house. *Id.* at 13. However, Father violated his parole and was incarcerated at SCI Camp Hill. *Id.* Father then moved to another halfway house before violating his parole yet again and returning to SCI Camp Hill. *Id.* His maximum sentence was set to expire on May 29, 2018. *Id.* Importantly, the record is clear that Father had no contact with the Children after October 2016. *Id.* at 18. Father did not visit with the Children in person or send them letters. *Id.* at 18-19, 28.

On May 9, 2018, CYS filed a petition to terminate Father's parental rights to the Children involuntarily. The orphans' court held a termination hearing

on May 21, 2018.[2]  Following the hearing, on May 23, 2018, the court entered

decrees terminating Father's rights.  The court entered amended decrees on

May 29, 2018, to correct a typographical error.  Father timely filed a notice of

appeal on June 21, 2018.[3]  At the same time, Father's counsel filed a petition

to withdraw and appoint new substitute counsel.[4]  The court denied counsel's

petition on June 27, 2018, and directed her to file a concise statement of

errors complained of on appeal.  Counsel timely complied by filing a concise

statement on July 6, 2018.  Counsel alleged multiple errors in her concise

statement, but explained that she would likely be filing an **Anders** brief and

petition to withdraw, as she believed Father's appeal was frivolous.  Counsel

filed an **Anders** brief and petition to withdraw in this Court on August 23,

2018.

---

[2] The Children had both legal counsel and a separate guardian *ad litem* during the hearing.

[3] Generally, an appellant must file multiple notices of appeal when appealing one or more orders resolving issues arising on more than one docket.  **See** Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."); **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal").  Here, however, the orphans' court entered both termination decrees on a single docket.

[4] Counsel averred that Father requested a new attorney to represent him on appeal and that she could no longer represent Father adequately because she had accepted a new job and was experiencing an increased workload.

We begin by addressing the petition to withdraw and **Anders** brief. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'"). This Court extended the **Anders** procedure to appeals from decrees terminating parental rights involuntarily in **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to **Anders**, counsel must comply with the following requirements.

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). Counsel must provide this Court with a copy of the letter advising the appellant of his or her rights. **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, our Supreme Court has set forth the following requirements for **Anders** briefs.

> (1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, counsel filed a petition to withdraw and ***Anders*** brief stating that she conducted a review of the record and determined that Father's appeal is frivolous. Counsel's brief includes a summary of the facts and procedural history of this case, a list of issues that could arguably support the appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority. Counsel also provided this Court with a copy of her letter to Father, advising him of his right to obtain new counsel or proceed *pro se*.[5] Therefore, counsel has complied with the requirements of ***Anders*** and ***Santiago***, and we may proceed to review the issues outlined in her brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's ***Anders*** brief presents the following issues for our review.

---

[5] In addition, counsel indicated in her letter that she was enclosing a copy of her petition to withdraw and brief.

A. Whether the [orphans'] court committed an error of law and/or abused its discretion in finding [CYS] clearly and convincingly proved that a statutory ground existed under 23 Pa.C.S.[A.] §[]2511(a) to involuntarily terminate the parental rights of Father[?]

B. Whether the [orphans'] court committed an error of law and/or abused its discretion in finding that [CYS] clearly and convincingly proved that involuntary termination of the parental rights of Father served the needs and welfare of the [C]hildren and was in the best interest of the [C]hildren under 23 Pa.C.S.[A.] §[]2511(b)[?]

C. Whether the [orphans'] court committed an error of law and/or abused its discretion in finding that [CYS] clearly and convincingly proved that Father cannot or will not remedy the conditions which led to the removal of the [C]hildren[?]

D. Whether the [orphans'] court committed an error of law and/or abused its discretion in ordering termination of Father's parental rights because the termination was not supported by competent and sufficient evidence in that it was primarily based upon Father's incarcerations[?]

*Anders* Brief at 11-12.

We address Father's claims together as they are interrelated. In doing so, we apply the following standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs involuntary termination of parental rights.  *See* 23 Pa.C.S.A. § 2511.  It requires a bifurcated analysis.

> . . . . Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the instant matter, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provides as follows.[6]

---

[6] Although its decrees and opinion are somewhat unclear, it appears that the orphans' court may also have intended to terminate Father's parental rights pursuant to Section 2511(a)(5).  To the extent that the court did so, it erred. Section 2511(a)(5) requires that the subject child have "been removed from the care of the parent by the court or under a voluntary agreement with an agency" in order to be applicable.  23 Pa.C.S.A. § 2511(a)(5).  Because CYS did not remove the Children from Father's care, the court could not terminate his parental rights under that Section.  *See In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (concluding that termination was inappropriate under Sections 2511(a)(5) and (8) "because the record reflects that C.S. was never in Appellant's care and, therefore, could not have been removed from his care.").

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

\*\*\*

23 Pa.C.S.A. § 2511(a)(1), (b).

We consider first whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(1).  To meet the requirements of that section, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties."  **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008).  The orphans' court must then consider the parent's explanation for his or her abandonment

of the child, in addition to any post-abandonment contact. ***Id.*** Our courts have emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of a child. ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting ***In re C.M.S.***, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

***Id.*** (citations omitted).

Of particular importance to this appeal, incarceration does not relieve a parent of the obligation to perform parental duties. Our case law does not require that an incarcerated parent "perform the impossible." ***Id.*** at 857. However, that parent must utilize the resources available in prison to preserve a relationship with his or her child. ***Id.*** at 855; ***see also In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012) (discussing ***In re Adoption of McCray***, 331 A.2d 652 (Pa. 1975)).

In the instant matter, the orphans' court found that Father failed to perform his parental duties for a period of time far greater than the six months

immediately preceding the filing of the termination petition on May 9, 2018. Orphans' Court Opinion, 7/20/18, at 14. The court reasoned that Father had not seen or spoken to the Children since October 2016. *Id.* Moreover, the court rejected Father's insistence during the termination hearing that he was unable to send letters to the Children because he did not have their address. *Id.* The court reasoned that Father knew how to contact CYS and that he could have sent letters there. *Id.* at 15. It also cited the testimony of the CYS caseworker, who stated that he provided Father with an address where he could send letters. *Id.* at 14.

Our review of the record supports the findings of the orphans' court. During the hearing, CYS caseworker, Andrew Smith, testified that Father's last known contact with the Children occurred in or before October 2016. N.T., 5/21/18, at 18. He explained that Mother obtained a temporary protection from abuse order against Father during that month, but that the order was dismissed after she failed to appear at a subsequent hearing. *Id.* Mother had alleged that she and Father were living together, but that she "kicked him out. And then he came back and assaulted Mother." *Id.* Father conceded that he last saw the Children on October 29, 2016, but disputed Mother's allegations, stating, "she was scared that they were going to award the girls to me and that's why she put the PFA, [*sic*] but it was a lie . . . ." *Id.* at 27-30.

Mr. Smith further testified that Father did not send the Children letters or make any other kind of contact. *Id.* at 19. Father "did inquire as to the [C]hildren" during phone calls with Mr. Smith and expressed his desire to gain

- 10 -

custody. *Id.* at 14. As a result, Mr. Smith "e-mailed his counselor an Attorney Request and the address for Concern, the foster care provider for the girls at the time, so that he could write to the girls, but I was never informed that Concern received any letters from the father." *Id.* Father acknowledged that he had not written any letters to the Children, but insisted, "I have written two letters to [CYS]. Just last week I wrote another letter to the agency." *Id.* at 28.

Thus, the record confirms that Father failed to perform parental duties for the Children for at least six months immediately preceding the filing of the termination petition on May 9, 2018. Father had no contact with the Children at all during the relevant six months. He did not see the Children in person, nor did he attempt to send them letters. While Father's incarceration made it more difficult for him to maintain a relationship with the Children, he remained obligated to make a good faith effort and to utilize the resources available to him in prison. *B.,N.M.*, 856 A.2d at 855. Because he did little if anything to fulfill this obligation, we discern no abuse of discretion.

We next consider whether the orphans' court abused its discretion by involuntarily terminating Father's parental rights to the Children pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any,

between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted).

Here, the orphans' court concluded that terminating Father's parental rights would best serve the needs and welfare of the Children. Orphans' Court Opinion, 7/20/18, at 15. The court reasoned that the Children have never mentioned Father since entering foster care. *Id.* Further, the court reasoned that the Children have developed a close relationship with their pre-adoptive foster parents. *Id.* The court noted that it met with the Children prior to the hearing and that they referred to their foster parents as "Mom" and "Dad." *Id.* It also noted that the Children's foster parents involve them in a variety of activities and allow them to maintain a relationship with their adult half-sibling. *Id.*

Once again, our review supports the findings of the orphans' court. Mr. Smith testified that the Children reportedly "have never mentioned the father" while in foster care. N.T., 5/21/18, at 17. In contrast, he confirmed that the Children refer to their foster parents as "Mom and Dad." *Id.* at 15. Mr. Smith opined that the Children are very happy in their foster home and that it would be contrary to their best interests to remove them. *Id.* at 17-20. He stated that the foster parents would like to adopt the Children and that they "do an awful lot. . . . I know the foster parents have taken [the Children] to the beach, to Blue Marsh, to the Bloomsburg Fair a couple of times, roller skating. . . . The girls are in their second round of dance classes." *Id.* at 14-15. In addition, the foster parents have developed a very positive relationship with the Children's older half-sister, allowing the Children to maintain contact with her. *Id.* at 15-16. At the conclusion of the hearing, the court noted that it met with the Children, and asked them "who their mom and dad were and they both indicated out loud, and . . . pointed at the foster parents when identifying Mom and Dad[.]" *Id.* at 46.

Thus, it is clear that terminating Father's parental rights will best serve the Children's needs and welfare. There is no indication in the record that the Children have a bond with Father or that terminating Father's parental rights would harm the Children. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists."). The Children never mention Father and had not seen him in over a year and a half at the time of

the hearing. Meanwhile, the Children have developed a close relationship with their pre-adoptive foster parents, who are willing and able to provide them with permanence and stability. We again discern no abuse of discretion.

Accordingly, our independent review of Father's issues demonstrates that they do not entitle him to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. ***See Flowers***, 113 A.3d at 1250. We therefore grant counsel's petition to withdraw and affirm the decrees of the orphans' court.

Petition to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/11/2019